IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NATHANIEL A. SPEELMAN, | ) | CASE NO. 1:17 CV 1915 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| WARDEN LASHANN EPPINGER, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me by referral[1] is the *pro se* petition of Nathaniel A. Speelman for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Speelman is currently under five years of post-release control, having been released from Grafton Correctional Institution on October 22, 2017.[3] Speelman served a two year term of incarceration imposed by the Ashland County Common Pleas Court on December 2, 2015, after a jury convicted Speelman of pandering sexually oriented material involving a minor.[4]

Here, Speelman raise two grounds for relief, each alleging the ineffectiveness of his trial counsel.[5] The State, in its return of the writ, contends that in both instances the

---

[1] The matter was referred to me pursuant to Local Rule 72.2 by United States District Judge Benita Y. Pearson in a non-document order entered on September 13, 2017.
[2] ECF No. 1.
[3] *See* https://drc.ohio.gov/offendersearch
[4] ECF No. 8 at 3 (citing record). Speelman was also fined $500 and was adjudicated a Tier II sex offender.
[5] ECF No. 1 at 5-7.

decision of the Ohio appeals court that denied these claims was not an unreasonable application of clearly established federal law.[6]

For the reasons that follow, I will recommend that Speelman's petition be denied.

## Facts

**A.    Underlying facts and trial**

As set out by the state appeals court,[7] Kim Crigger, a resident of Ashland, Ohio and the mother of Speelman's child, went to the Ashland Police Department to report receiving a "strange" cell phone video from Speelman that showed Speelman being touched in a sexual way by a 13-month old boy, his biological son.[8]  After Crigger showed the video to police, the police – accompanied by Crigger – confronted Speelman about it, advising him of his rights.[9]  Speelman then admitted to recording the video on his phone, and the police seized the phone.[10]  Speelman voluntarily gave police his passcode to unlock the phone.[11]

Speelman's brief on appeal to the Ohio Supreme Court further details that Speelman testified at trial that he recorded his son touching him while playing in the shower "to capture the moment" and as an expression of "innocence".[12]  He further admitted to the

---

[6] ECF No. 8 at 8-12.
[7] Facts found by the appeals court are here presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  Speelman has offered nothing to rebut the facts found.
[8] ECF No. 8 at 2 (citing record).
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] ECF No. 8, Attachment 2 at 102 (citing record).

2

jury that sending the video to the child's mother "was stupid."[13]

Following a three-day trial, a jury convicted Speelman of pandering sexually oriented material involving a minor but acquitted him of the charge of gross sexual imposition.[14] The prosecution dismissed a charge of child endangering.[15] The trial court on December 2, 2015, sentenced Speelman to two years in prison, fined him $500, and assessed costs.[16] He was also found to be a Tier II sex offender.[17]

**B.     Direct appeal**

*1.     Ohio appeals court*

On December 25, 2015, Speelman timely filed an appeal to the Ohio court of appeals. He raised the following two assignments of error:

1. Counsel was ineffective by failing to move the court to waive costs and failing to file an affidavit of indigency.

2. Counsel was ineffective by failing to move the court to suppress the evidence when the search and seizure were warrantless.[18]

After the State filed a brief in response, on June 9, 2016, the Ohio appellate court overruled Speelman's assignments of error and affirmed the judgment of the trial court.[19]

*2.     Supreme Court of Ohio*

After being granted leave to file a delayed appeal,[20] on January 3, 2017, Speelman

---

[13] *Id*.
[14] ECF No. 8 at 3 (citing record).
[15] *Id.* (citing record).
[16] *Id.* (citing record).
[17] *Id.* (citing record).
[18] ECF No. 8 at 3 (citing and quoting record).
[19] *Id.*
[20] ECF No. 8, Attachment 2 at 83.

3

filed his appellate brief in the Ohio Supreme Court raising the same two claims as propositions of law as were asserted to the Ohio appeals court.[21] The State filed a brief in opposition.[22] On May 17, 2017, the Supreme Court of Ohio declined jurisdiction and dismissed the case.[23]

### 3. *Post-conviction*

Speelman filed two post-conviction motions that were denied by the trial court in judgments that were not appealed.[24] These claims are not relevant to the claims asserted in his federal habeas petition.[25]

### 4. *Federal habeas petition*

On September 3, 2017, Speelman timely filed the present petition for federal habeas relief asserting the following two grounds:

1. Counsel was ineffective by failing to move the court to waive costs, and in failing to file an affidavit of indigency.

2. Counsel was ineffective by failing to move the court to suppress the evidence when the search and seizure were warrantless. (Fourth, Sixth, Fourteenth Amendments USC).[26]

The State, in its return of the writ, maintains that the decision of the Ohio appeals court as to each claim was not an unreasonable application of clearly established federal law.

---

[21] *Id*. at 96.
[22] ECF No. 8 at 4 (citing record).
[23] *Id.*
[24] *Id*. (citing record).
[25] *Id*. (citing record).
[26] ECF No. 1 at 5, 7.

4

Ohio law, as cited by the Ohio appeals court, provides that trial costs may assess costs against an indigent.[27] Thus, because the federal habeas court must defer to the Ohio court as to matters of Ohio law, trial counsel was not deficient in his performance by not filing an affidavit of indigency.[28] Further, as the Ohio appeals court observed, trial counsel's emphasis on Speelman's regular work history – and not filing an affidavit of indigency – was for the tactical purpose of making Speelman more likely to receive a sentence of community control and not exclusively jail time.[29] Accordingly, counsel's performance, given the deference due, was not prejudicial.[30]

Next, the State points out, as did the appellate decision, that failing to move to suppress the seizure of Speelman's phone also resulted in no prejudice.[31] The prosecution already had the video because it was on the recipient's phone, which she gave to the police to initiate the investigation.[32] Speelman thereby suffered no prejudice because the police also had his cell phone. Further, because Speelman admitted to police at the outset of the investigation that he had taken the video, there was ample probable cause for a warrant to obtain his phone, meaning that the prosecution would inevitably have taken possession of it.[33]

---

[27] ECF No. 8 at 8 (quoting record).
[28] *Id.*
[29] *Id.* at 9 (citing and quoting appeals court opinion).
[30] *Id.*
[31] *Id.* at 11 (citing and quoting record).
[32] *Id.*
[33] *Id.* at 12.

5

## Analysis

**A.  Preliminary observations**

Before proceeding further, I make the following preliminary observations:

1. There is no dispute that Speelman was in custody for purposes of the federal habeas statute by reason of his being under community control at the time the petition was filed.[34]

2. There is also no dispute, as detailed above, the petition was timely filed under the applicable statute.

3. In addition, my own review of the docket establishes that this is not a second or successive petition arising from this conviction and sentence.

4. Moreover, it appears that these claims have been totally exhausted in the Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.

5. Finally, Speelman has not sought the appointment of counsel nor requested an evidentiary hearing.

**B.  Standards of review**

*1.  Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")*

AEDPA,[35] codified at 28 U.S.C. § 2254, strictly circumscribes a federal court's ability to grant a writ of habeas corpus.[36]  Under AEDPA, a federal court shall not grant a habeas petition with respect to any claim adjudicated on the merits in state court unless the state adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or

---

[34] *See Owens v. Eberlin*, 2009 WL 1974406, at *1 (N.D. Ohio July 7, 2009) (citations omitted).
[35] Pub. L. No. 104-132, 110 Stat. 1214 (1996).
[36] *See* 28 U.S.C. § 2254 (2012).

6

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.[37]

The Supreme Court teaches that this standard for review is indeed both "highly deferential" to state court determinations[38] and "difficult to meet,"[39] thus preventing petitioner and federal court alike "from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."[40]

a. *"Contrary to" or "unreasonable application of" clearly established federal law*

Under § 2254(d)(1), "clearly established Federal law" includes only Supreme Court holdings and does not include dicta.[41] In this context, there are two ways that a state court decision can be "contrary to" clearly established federal law:[42] (1) in circumstances where the state court applies a rule that contradicts the governing law set forth in a Supreme Court case[43] or (2) where the state court confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but nonetheless arrives at a different result.[44] A state court's decision does not rise to the level of being "contrary to" clearly established federal law simply because that court did not cite the Supreme Court.[45] The

---

[37] 28 U.S.C. § 2254(d) (2012).
[38] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted).
[39] *Id.* (citation omitted).
[40] *Rencio v. Lett*, 559 U.S. 766, 779 (2010).
[41] *Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).
[42] *Brumfield v. Cain*, 135 S. Ct. 2269, 2293 (2015).
[43] *Id.*
[44] *Id.*
[45] *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam).

7

state court need not even be aware of the relevant Supreme Court precedent, so long as neither its reasoning nor its result contradicts it.[46] Under the "contrary to" clause, if materially indistinguishable facts confront the state court, and it nevertheless decides the case differently than the Supreme Court has previously, a writ will issue.[47] When no such Supreme Court holding exists, the federal habeas court must deny the petition.

A state court decision constitutes an "unreasonable application" of clearly established federal law when it correctly identifies the governing legal rule but applies it unreasonably to the facts of the petitioner's case.[48] Whether the state court unreasonably applied the governing legal principle from a Supreme Court decision turns on whether the state court's application was objectively unreasonable.[49] A state court's application that is "merely wrong," even in the case of clear error, is insufficient.[50] To show that a state court decision is an unreasonable application, a petitioner must show that the state court ruling on the claim being presented to the federal court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[51] Under the "unreasonable application" clause, the federal habeas court must grant the writ if the State court adopted the correct governing legal

---

[46] *Id.*
[47] *See id.*
[48] *White v. Woodall*, 134 S. Ct. 1697, 1699 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000)).
[49] *Id.* (quoting *Lockyear v. Andrade*, 538 U.S. 63, 75-76. (2003)).
[50] *Id.*
[51] *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

principle from a Supreme Court decision, but unreasonably applied that principle to the facts of the petitioner's case.

### b.     *"Unreasonable determination" of the facts*

The Supreme Court has recognized that § 2254(d)(2) demands that a federal habeas court accord the state trial courts substantial deference:[52] Under § 2254(e)(1), "a determination of a factual issue made by a [s]tate court shall be presumed to be correct."[53] A federal court may not characterize a state court factual determination as unreasonable "merely because [it] would have reached a different conclusion in the first instance."[54] While such deference to state court determinations does not amount to an "abandonment or abdication of judicial review" or "by definition preclude relief,"[55] it is indeed a difficult standard to meet. "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual

---

[52] *Brumfield*, 135 S. Ct. at 2277.
[53] 28 U.S.C. § 2254(e)(1) (2012).
[54] *Brumfield*, 135 S. Ct. at 2277 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).
[55] *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination.") (internal quotation marks omitted)).

9

findings and to substitute its own opinions for the determination made on the scene by the trial judges."[56]

## 2. *Ineffective assistance of counsel*

In *Higgins v. Renico*,[57] the Sixth Circuit re-stated the foundational rubric for reviewing claims of ineffective assistance of counsel pursuant to the long-standing teaching of *Strickland v. Washington*:[58]

> Under *Strickland*, a defendant must establish both that his counsel's performance was seriously deficient and also that he suffered prejudice as a result of such deficiency.[59]

The *Higgins* court then proceeded to discuss the applicable standards for evaluating each prong of the *Strickland* test. It explained seriously deficient performance in the following terms:

> When complaining of his counsel's deficient performance, a convicted defendant must show that counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms." A reviewing court must judge the reasonableness of counsel's actions on the facts of the defendant's case, viewed from counsel's perspective at the time, recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." In essence, a defendant has the burden of proving by a preponderance of the evidence, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."
>
> "Because advocacy is an art not a science, ... [counsel's] strategic choices must be respected" if they were made after a

---

[56] *Davis v. Ayala*, 135 S. Ct. 2187, 2202 (2015) (citation omitted).
[57] *Higgins v. Renico*, 470 F.3d 624 (6th Cir. 2006).
[58] *Strickland v. Washington*, 466 U.S. 668 (1984).
[59] *Higgins*, 470 F.3d at 631.

10

thorough investigation of the law and facts relevant to possible options." Such choices can vary greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference. Indeed, such strategic choices are virtually unchallengeable. As explained by the Supreme Court:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Thus, counsel cannot be adjudged ineffective for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy."[60]

The clearly established federal law of establishing prejudice from deficient performance of counsel was stated by the *Higgins* court as follows:

> Even where counsel's performance is deficient, a petitioner is not entitled to habeas relief unless he also demonstrates ensuing prejudice. In evaluating the prejudice suffered by a defendant as a result of his counsel's deficient performance, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings."

---

[60] *Id.* at 631-32 (internal citations omitted).

11

> Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Rather, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Although the defendant need not prove that counsel's deficient conduct more likely than not affected the verdict, the defendant must show that "absent his counsel's error, the courts of appeal would have reasonable doubt with respect to his guilt." "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." In this vein, the court must determine whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."
>
> Whether an error actually prejudiced a defendant is weighed against the "totality of the evidence before the judge or jury." A verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."[61]

Moreover, it is well-settled that a federal habeas court may, as an initial inquiry, consider either the alleged deficiency itself or the claim of prejudice resulting from such deficiency since establishing both prongs is required to grant the writ.[62]

### C. Application of standards

The Ohio appeals court began its analysis of both claims of ineffective assistance of counsel by properly stating the clearly established federal law applicable to these claims. The two-part test, as stated above in *Strickland*, was quoted by the appeals court here.[63]

---

[61] *Id.* at 633-34 (internal citations and parenthetical comments omitted).
[62] *Id.* at 631 n.3.
[63] ECF No. 8, Attachment 2 at 69.

12

The court further noted, as is true in federal law, that a reviewing court must give deference to counsel's strategic choices and not indulge in the "distorting effect of hindsight."[64]

### 1. *Ground One*

The Ohio appeals court then provided two reasons for denying Speelman's claim in ground one that his trial counsel was ineffective for not filing an affidavit of indigency, which Speelman asserts resulted in him paying costs he should not have paid.[65] First, the appeals court noted that under Ohio law, courts may still assess costs against an indigent party.[66] As the State observes, this Court is bound by the Ohio court's interpretation of state law.[67] Further, the Ohio appeals court found, as did the trial court, that Speelman was employed at the time of trial and had the "future ability to be employed and pay financial sanctions."[68] Thus, the appeals court concluded, his counsel (who was retained and not court-appointed) had every reason to not argue for a finding that Speelman was indigent, which would have been unlikely given the facts.[69] Moreover, the appeals court reasoned that counsel had a sound strategic reason to highlight Speelman's financial and work status since doing so would make the case that he would be a good candidate to receive a sentence of community control and not prison.[70]

In sum, as the Ohio appeals court stated, given the ability in Ohio law to assess costs

---

[64] *Id.* (internal quotation and citation omitted).
[65] *See* ECF No. 1 at 5.
[66] ECF No. 8, Attachment 2 at 69-70.
[67] ECF No. 8 at 8.
[68] ECF No. 8, Attachment 2 at 70.
[69] *Id.*
[70] *Id.* at 70-71.

even against an indigent, and counsel's strategic objective of trying to make the case that Speelman was a strong candidate to serve his sentence on community control and not in prison, I recommend finding that the Ohio court's decision on ground one was not an unreasonable application of the clearly established federal law of *Strickland*.

## *2. Ground Two*

The assertion in ground two is that counsel was ineffective for not moving to suppress the evidence of the cell video taken directly from Speelman's phone, during what was claimed to be a warrantless search. As stated above, the Ohio court found that admitting this particular video into evidence was not prejudicial because the police already had a copy of that video from Crigger's phone, which she gave to the police to initiate the investigation.[71] Further, the appellate court concluded that even as to Speelman's particular phone, that phone would have ultimately been seized.[72] The Ohio court found that "[p]olice had already viewed the video on Ms. Crigger's cell phone and [Speelman] had admitted to making the video, [thus] providing ample probable cause to obtain a search warrant."[73]

Accordingly, for the reasons stated, I recommend finding that the Ohio appellate decision denying ground two was not an unreasonable application of the clearly established federal law of *Strickland*.

---

[71] *Id.* at 72.
[72] *Id.*
[73] *Id.*

14

## Conclusion

For the reasons stated, and after ADEPA review, I recommend denying on the merits the *pro se* petition[74] of Nathaniel A. Speelman for a writ of habeas corpus.

IT IS SO RECOMMENDED.

Dated: March 29, 2019          s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge

---

[74] ECF No. 1.

15

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[75]

---

[75] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).